**Edith Dallas Bauman ERNST, Individually and as Sole Personal Representative of the Estate of James U. Ernst, Plaintiff,**

v.

**Dorothea Tanning ERNST, Defendant.**

No. 88 Civ. 6066 (KC).

United States District Court,
S.D. New York.

Oct. 6, 1989.

Lankenau Kovner & Bickford, New York City (John C. Lankenau, Nathaniel J. Bickford, John Siegal, of counsel), for plaintiff.

Kelly, Roth & Hazen, New York City (William H. Roth, of counsel), for defendant.

OPINION AND ORDER

CONBOY, District Judge:

This action was brought by Edith Dallas Bauman Ernst ("Dallas Ernst" or "plaintiff"), a Florida citizen, who is the widow and sole personal representative of James U. Ernst ("Jimmy Ernst"), the only son of

Max Ernst, the celebrated artist, who, with Salvador Dali and Joan Miro, transformed the Dadaist school of painting into the Surrealist Movement during the 1920's in Paris. In brief, plaintiff alleges that defendant Dorothea Tanning Ernst, Max Ernst's (fourth) wife of thirty years, and an American citizen, fraudulently concealed, converted, and unlawfully disposed of certain jointly-owned assets, namely works of art of Max Ernst, that defendant breached a French contract (the "Transaction") setting out the rights of the parties, and that she breached her fiduciary duties to the plaintiff.

The Transaction was entered into by the parties in 1979 in an attempt to resolve their differences arising out of the division of Max Ernst's estate (the Partage) two years earlier. At the time of his death in 1976, the artist was a French citizen, and he left a will, governed by French law, providing for the disposition of works of art, personal objects and residences located in France. We note that Max Ernst, by his will, attempted to disinherit his son, Jimmy Ernst, and leave all of his estate to his wife, Dorothea Tanning Ernst. However, because French laws of inheritance governed and because these laws do not allow for the disinheritance of children, Jimmy Ernst was able to take under the will and participate in the Partage.

The complaint makes only one specific claim regarding defendant's alleged conveyance of estate assets, purportedly excluded from the Inventory of the Estate in 1977, prior to the execution of the Partage. Specifically, in paragraph 13, plaintiff alleges that in 1983 defendant donated 205 items to the Beinecke Rare Book and Manuscript Library of Yale University, which books were not itemized in the Inventory. Paragraphs 14 and 15 allege only that the defendant conveyed "additional assets" and approved of additional castings from "certain plasters" without the knowledge or consent of plaintiff or her predecessor. These paragraphs do not specifically identify which assets defendant allegedly conveyed or which additional plasters defendant allegedly authorized.

In an effort to deflect the defendant's attack on the lack of particularity in the complaint, plaintiff attempts to provide further information in her affidavit in opposition to the defendant's motion to dismiss. In addition to assertions regarding her discovery of the Yale donation, Dallas Ernst alleges that an exhibition and sale occurred at Museum Tower in New York in the Spring of 1987 and that one of the pieces exhibited was an uninventoried piece. Affidavit of Edith Dallas Bauman Ernst, dated December 9, 1988, at ¶ 13 ("Dallas Ernst Aff."). She also alleges that a sale at Sotheby's in London of 118 of Max Ernst's works, described in the sale catalogue as the "Property of Liselotte Ungers," contained works that were not inventoried, and, impliedly alleges that Liselotte Ungers had to be a pseudonym for the defendant, Dorothea Tanning Ernst, because no one else would be able to marshal such a large collection. *Id.* at ¶ 14. Finally, she alleges that Christie's in New York auctioned an unauthorized (at least by plaintiff) cast of the sculpture entitled "Cheri Bibi." *Id.* at ¶ 15.

Defendant has moved to dismiss, or alternatively for summary judgment, on five different grounds, only two of which, the forum selection clause and the forum non conveniens aspects, will be dealt with here in light of their dispositive nature.[1]

The Transaction appears to contain a forum selection/arbitration clause. Article XIX of the Transaction provides in relevant part:

... Furthermore, the parties will submit all problems arising under this Agreement [Transaction] to arbitration.

For the purpose of arbitration, each party respectively elects domicile, Mrs. Max Ernst in Maitre Pierre Hebey's law firm on 10 Boulevard Suchet, Paris 16th, and Mr. Jimmy Ernst in Maitre Roland Dumas' law firm on 28 rue de Bievre,

---

1. The other three grounds are first, that the conversion, fraud and breach of contract claims are barred by the statute of limitations; second, that the complaint fails to specifically plead fraud; and third, that the plaintiff failed to allege facts entitling her to an accounting.

Paris 5th, thus giving jurisdiction to the Paris Tribunal de Grande Instance over their eventual claims with respect to the performance of the Agreement.

Complaint, Ex. B, at 14. We say "appears" because, as the parties concede, it was inartfully drawn, no doubt due to the fact that it was first drafted in English, then amended and redrafted by numerous attorneys and translated back and forth between English and French, with the final version being executed in French. *See* Affidavit of Marilyn G. Diamond, sworn to December 14, 1988, at ¶ 3 ("Diamond Aff."). There was an English translation "prepared for the assistance of the parties, but it is not definitive," Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss or for Summary Judgment ("Pltf. Mem.") at 8 n *, nonetheless, we have no choice but to rely on this translation, to which translation neither party objects.

The parties have each submitted statements of French counsel purporting to be "expert" in French law. See Affidavit of Jean–Marie Duchemin, undated ("Duchemin Aff."); Affidavit and Opinions of Jacques Marchand, dated November 10, 1988, and January 13, 1989 ("Marchand Op. or Aff."). About the only thing these French experts seem to agree upon is that the first part of the article, as quoted above, providing for arbitration of "all problems," is contrary to French law and policy. They state that in France only commercial parties may enter into agreements binding themselves to arbitration in the future. Duchemin Aff. at ¶ 13; Marchand 1/13/89 Op. at 1, ¶ 1. They disagree, however, on the severability of this clause from the rest of the Article.

Plaintiff's expert, Mr. Duchemin, is of the opinion that the invalidity of the arbitration clause renders the rest of the article defective. This opinion is based on the fact that the clause providing for arbitration is directly followed by the elections of Paris domicile by each party, which in turn is followed by a grant of jurisdiction to the Tribunal de Grande Instance of Paris (the initial trial court in Paris in the French civil court system). Mr. Duchemin opines that

the election and grant of jurisdiction to the French court were conditioned upon an arbitration proceeding and that these last two clauses were drafted solely against the possibility that circumstances might necessitate that court's intervention in the arbitration, i.e. if the parties could not agree on arbitrators or had problems enforcing the award, and that in the event there was no arbitration, the Tribunal had no jurisdiction. Duchemin Aff. at ¶ 12.

On the other hand, defendant's expert, Mr. Marchand, is of the belief that the grant of jurisdiction is not limited to merely aiding the arbitration, and that if that was the drafters' intent, they would have used more precise words to convey such a meaning. Mr. Marchand 1/13/89 Op. at ¶ 1, 1–2. On the contrary, he concludes that the drafters, "two eminent attorneys," undoubtedly knew that the arbitration aspect of Article XIX was unenforceable and that it was their intent to encourage the parties to voluntarily seek resolution of any disputes by arbitration, but in the event that the parties chose not to abide by these precatory words, the appropriate forum would be the Tribunal de Grande Instance. *Id.* Mr. Marchand arrives at this conclusion based on his reading of the language in question, specifically the last sentence regarding "eventual claims," in connection with Article 1157 of the French Civil Code which he states "requires [in cases where a contract is susceptible of two interpretations] a Court to choose the interpretation which gives effect to the clause and which is enforceable at law, rather than the interpretation which would make the clause unenforceable and of no effect." *Id.* at 2.

■ Not having been provided with a copy of Article 1157 of the Code, we cannot be certain that it actually mandates this result. We observe, however, that plaintiff does not challenge this assertion. Furthermore, we note that under our law, a somewhat similar rule of construction obtains. That rule provides that "an interpretation that gives a reasonable and effective meaning to all terms of a contract is generally

preferred to one that leaves a part unreasonable or of no effect." *Rothenberg v. Lincoln Farm Camp, Inc.,* 755 F.2d 1017, 1019 (2d Cir.1985) (citations omitted); *see also* Corbin on Contracts § 545 at 521 (One Volume Ed.1952) ("As between two otherwise reasonable interpretations, preference may be given to the one that will make the agreement lawful and valid."). Here, in order to give the entire article a reasonable and effective meaning, we determine that the interpretation suggested by Mr. Marchand is the correct one. Accordingly, we read Article XIX as stating a desire that the parties submit to arbitration, but if they cannot so agree, the forum selected by the parties is to be the Tribunal de Grande Instance in Paris. This conclusion is bolstered by the many references to French law throughout the Transaction, see *infra* at 65, which clearly manifest the parties' intent to select the French forum.

In light of the federal policy of enforcing forum selection clauses unless the party seeking to avoid the contractual forum demonstrates that it "will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court," *M/V Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 18, 92 S.Ct. 1907, 1917, 32 L.Ed.2d 513 (1972), and the fact that no such showing has been made here,[2] we direct the parties to proceed in France in accordance with Article XIX of their agreement.

■ An analysis under the forum non conveniens doctrine yields the same result, that the appropriate forum for this dispute is in France.[3] The "ultimate inquiry" in a forum non conveniens analysis is where the place of "trial will best serve the conve-

nience of the parties and the ends of justice." *Koster v. Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 527, 67 S.Ct. 828, 833, 91 L.Ed. 1067 (1947). The determination is committed to the discretion of the district court, *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981), and may be made on the basis of affidavits. *Transunion Corp. v. Pepsi-Co, Inc.,* 811 F.2d 127, 130 (2d Cir.1987). The Supreme Court in *Gulf Oil Co. v. Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947), set out the "public interest" and "private interest" factors to be considered in this determination. "Because the factors relevant to the inquiry are heavily oriented to the individual case," *Rudetsky v. O'Dowd,* 660 F.Supp. 341 (E.D.N.Y.1987), the analysis is designed to be flexible and no central emphasis is put on any one factor. *Piper Aircraft,* 454 U.S. at 249–50, 102 S.Ct. at 262–63.

Plaintiff's choice of forum, especially if it is a home forum, is important, yet it is not dispositive. *Id.* at 255 n. 23, 102 S.Ct. at 266 n. 23. We note that plaintiff is a Florida citizen suing a New York citizen on two French contracts, to which each is a party or has the rights of a party, which contracts are governed by French laws of inheritance controlling the estate of a French citizen. Looking first to the "public interest" factors, these include "the difficulty which arises when a forum must apply foreign choice of law rules and foreign law, the administrative problems which follow when litigation is added to its existing heavy caseloads in congested centers rather than being handled at its origin, ... the imposition of jury duty upon a

---

**2.** This fact will be further elaborated upon in the forum non conveniens analysis that follows. However, we note here that there is an ongoing proceeding between these parties which concerns terms of the Partage and the Transaction not in issue here and which was commenced in the Tribunal de Grande Instance and withdrawn to arbitration by consent of the parties. Accordingly, although plaintiff vehemently argues that this ongoing French action has no bearing on the issue of the enforceability of Article XIX of the Transaction, we must disagree to the extent that plaintiff cannot argue that a transfer to a

French forum is an extreme hardship which essentially denies her her day in court.

**3.** The Second Circuit has obviated the need for any type of analysis under *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), by stating that the forum non conveniens analysis achieves a similar result whether the analysis is performed pursuant to New York or federal law. *Schertenleib v. Traum,* 589 F.2d 1156, 1162 n. 13 (2d Cir.1978). For simplicity, we will primarily apply federal law.

community which has no relation to the litigation," *Fustok v. Banque Populaire Suisse*, 546 F.Supp. 506, 509 (S.D.N.Y. 1982), and the "local interest in having localized controversies decided at home." *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. at 843.

As these factors relate to the instant action, we view the local interest and foreign law considerations as the most crucial.[4] Both plaintiff's contract and fraud claims require a factual determination as to whether the assets of the Estate of Max Ernst were correctly marshalled, inventoried and divided in the first instance, an inquiry that can only be properly undertaken in France. The Inventory was undertaken by Notaires, French public officials charged with such duties, and the Partage was executed in France in accordance with French laws of inheritance. The Transaction, the purported objective of which was to settle disputes between Max Ernst's heirs, was also executed in France. Plaintiff does not dispute that French law governs the Inventory and the Partage (the division of assets agreement); she does, however, dispute that French law applies to all disagreements arising out of the Transaction. We believe that this choice of law inquiry is one for a French Court to make as the agreement was executed in French and amended the Partage, which had been made pursuant to French law. Further-

more, the references to French law are rife throughout the Transaction. For instance, Article XII "Adjustment" provides that

> The parties agree that for any reason whatsoever, any assets that should have normally been included in the Inventory of May 17, 1977 should be discovered, they will proceed amicably to its division on the basis of their rights under the *rules of devolution of French law.* (emphasis added)

Other references to French law may be found in Articles II and IX, "Droit Moral;" Article III, disposition of assets according to the French Civil Code as well as the law of March 11, 1957; and Article IV, "Droit de Suite."[5] Furthermore, Article XIX, discussed above, confers jurisdiction on the Tribunal de Grande Instance of Paris.

Clearly, France has a greater interest in the outcome of this litigation than has the United States. France's fundamental interest is in the correct application of its law of devolution (inheritance); the Transaction amends the Partage, an official act by French Notaires, and any problems arising out of either document or the preceding Inventory, also performed by French Notaires, are properly a matter of concern to French authorities. These inheritance and estate laws are complex, which complexity is compounded for an American court by the fact that English translations often are

**4.** This is not to say that we have no opinion regarding the other "public interests." That this court "sits in one of the busiest districts in the country," *In re Union Carbide Corporation Gas Plant Disaster at Bhopal, India in December, 1984*, 634 F.Supp. 842, 861 (S.D.N.Y.1986), *aff'd as modified*, 809 F.2d 195 (2d Cir.), *cert. denied*, 484 U.S. 871, 108 S.Ct. 199, 98 L.Ed.2d 150 (1987), is well-established and incontrovertible, and, thus, we need not discuss this factor at length. As regards the imposition of jury duty on our citizens, a fraud and breach of contract trial would, no doubt, be lengthy. And because of the extensive need for French witnesses and documents (as delineated in the body of this opinion), jurors would be required to endure continual translations which would in effect double the length of trial. If the dispute is resolved in Paris, the need for translation would be largely avoided.

**5.** According to the plaintiff's complaint,
> [t]he Droit Moral affords an artist and his heirs the right, among others to protect his work, even after sale, to determine how his

work is presented to the public, and to decide whether reproductions may be made.... [T]he Droit de Suite affords an artist, and his heirs, the right to participate in the proceeds realized from any resale of his work.

Complaint ¶ 10. In the transaction, Jimmy Ernst and Dorothea Tanning Ernst agreed to split evenly the proceeds resulting from the Droit de Suite. Transaction, Article IV. They also agreed that proceeds arising from the exploitation of other assets of the estate, other than as a result of the Droit de Suite, would be shared, with 75% to Dorothea Tanning Ernst, and 25% to Jimmy Ernst. As to the Droit Moral, they agreed that reproductions or the like would require the consent of both. *Id.* at 2. The law of March 11, 1957 is apparently the copyright law setting out these rights (droits). Plaintiff's entire cause of action, both the fraud and the breach of contract claims, arises out of these rights.

deficient in nuance and subtlety, for which the splendid French language is so justly renowned and universally admired. France also has a significant interest in seeing that its concepts of "Droit de Suite" and "Droit Moral" are correctly applied and implemented, another task which we feel we are not in the best position to handle. *Broadcasting Rights Int'l Corp. v. Societe du Tour de France, S.A.R.L.,* 675 F.Supp. 1439, 1448 (S.D.N.Y.1987) ("the myriad French connections present in this case underscore the simple truth that 'French law ... is much more sensibly and ably applied by the French judiciary than by this court.'") (citation omitted), *mot. to vacate denied,* 708 F.Supp. 83 (S.D.N.Y.1989).

Furthermore, France has a greater interest in addressing the claim of plaintiff and her predecessor-in-interest (Jimmy Ernst) than does the United States because Jimmy Ernst's (and thus plaintiff's) rights to participate in the division of assets, despite the express wish of his father as evidenced in the latter's will, arise solely out of the French law of the "reserve" which creates a forced share for the heirs of the decedent. Under the law of all the states in this country, save Louisiana which still retains a French civil law residuum, children may be completely disinherited by their parents; there are no "forced shares" for children as there are in many states for spouses of decedents. *See* E. Clark, L. Lasky, A. Murphy, *Gratuitous Transfers* at 124 (3d ed.1985). Finally, there are administrative difficulties which arise with our adjudicating, for instance, whether the French laws regarding the inventorying and division of assets of a French decedent were properly complied with, as plaintiff's complaint would require. This task, as well as numerous others, is best left to the jurisdiction with the most interest in the answer to this question, as well as the most competence in resolving this question—France. *cf. Giardina v. Fontana,* 733 F.2d 1047, 1052 & n. 1 (2d Cir.1984); *Phil-*

*lips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel,* 490 F.2d 509, 516 (2d Cir.1973). Accordingly, we conclude that the "public interest" factors clearly weigh in favor of dismissal on the grounds of forum non conveniens.

With respect to the "private interest" factors, such as "location of evidence and witnesses, the availability to compel attendance of unwilling witnesses, as well as other practical problems that make trial of a case easy, expeditious and inexpensive," *Fustok v. Banque Populaire Suisse,* 546 F.Supp. 506, 509 (S.D.N.Y.1982), we hold that they, too, favor dismissal on grounds of forum non conveniens. For example, the two Notaires who conducted the Inventory and the Partage are in France, as are the appraisers of the estate and the lawyers who represented Jimmy Ernst with respect to these events. Defendant's Reply Memorandum at 18 n. 5. These witnesses, as well as others, such as experts in French estate practice, would need to be called to determine whether certain assets were or should have been inventoried, and whether a failure to do so violated plaintiff's rights. Furthermore, the pertinent documents are all in French and would have to be translated, and it is doubtful that all the witnesses speak English with the fluency essential to formal legal proceedings here. Such witnesses and documents would certainly be required in order to determine whether plaintiff's fraud claims, i.e., the allegation that an exhibition and sale of a property not accounted for in the inventory occurred at Museum Tower here in New York, Dallas Ernst Aff. at ¶ 13, are well-grounded or frivolous.[6] While we agree with plaintiff that some American witnesses may need to be called, the facts to date indicate that some of the witnesses previously thought to be necessary may not in fact be needed as the defendant admits donating certain books to Yale and has provided the plaintiff with a list of those books. Defendant's Reply

---

6. Nor do we decide today whether Plaintiff's allegations, made in her affidavit in opposition, regarding the Cheri Bibi casting and the Sotheby auction of the "Property of Liselotte Ungers" are well-grounded, although we note that the Affidavits of Dorothea Tanning Ernst and John Cavaliero, and the exhibits appurtenant thereto, raise serious doubts with respect to these claims.

Memorandum at 11. Thus, witnesses from Yale may not even be required, as the only issue remaining with respect to plaintiff's book donation claim is whether these books belonged to either the plaintiff or the defendant or both—a question which requires French witnesses and is most likely governed by French law.

The same can be said for plaintiff's claim that since sales of what was purportedly jointly-held property occurred here, American witnesses are required, and that most of these contested assets are now here in New York, or the United States, making our forum more appropriate. Plaintiff neglects to mention, however, that ownership of these assets is governed by the French laws of inheritance, and French witnesses would be critical to understanding to whom the assets belonged even before a court could adjudicate the question of whether there were, in fact, such sales (the issue potentially requiring American witnesses) and if they violated plaintiff's rights. Accordingly, on these assertions, France provides the more appropriate forum for the dispute before us.

Plaintiff also asserts that there are jurisdictional problems with maintaining the suit in France, since Dorothea Tanning Ernst is no longer a resident of France. Plaintiff believes that the grant of jurisdiction, in Article XIX, to the Tribunal de Grande Instance is invalid. Pltf. Mem. at 24. As we have already noted, we decline to address the question of the validity of this grant of jurisdiction, reiterating our conviction that a French court should do so. We further observe that this appears to be a somewhat theoretical concern, since the defendant has indicated in her papers that she has consented and will consent to French jurisdiction with regard to the claims asserted here. Defendant's Reply Memorandum at 11 n. 3.

Plaintiff's final grounds question whether France is an adequate alternative forum. She contends that it is not adequate because French pleading and discovery requirements are more restrictive than is the case here. Pltf. Mem. at 29, 17.

Before we address this argument, we turn again to the pending proceeding in France, already briefly alluded to in footnote 2, *supra*. We are told that the French proceeding, commenced in 1987 in the Tribunal de Grande Instance of Paris and then withdrawn to arbitration by the consent of the parties, Letter of William H. Roth to the Court, dated January 18, 1989, concerns claims separate and apart from those brought here, Letter of Nathaniel J. Bickford to the Court, dated January 19, 1989. It is not denied by plaintiff that the French action does relate to certain terms of the Partage and the Transaction; in fact, that action specifically implicates Article XI of the Transaction and the section of the Partage entitled "Memoire." Plaintiff here is the defendant in that action and has not contested the adequacy of that forum. Her French counsel admits that with reference to that suit "the Tribunal of Paris is now unquestionably competent." Duchemin Aff. at ¶ 16. Plaintiff nonetheless argues that the French forum is not competent for this proceeding, which argument we find to be unpersuasive.

Bearing in mind that the defendant has already turned over to the plaintiff the titles of all of the books donated to Yale, we observe that there are several perfectly adequate discovery methods available under French law, albeit not as extensive as those available in our courts. *See* Marchand 1/13/89 Op. at ¶ 3; Duchemin Aff. at ¶¶ 4–9 at 2–3. There is nothing in the doctrine of forum non conveniens which prevents courts from ceding jurisdiction to other courts whose procedures and practices differ from ours, and which are arguably less favorable than ours, so long as the foreign forum allows the party an opportunity to be heard. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 247, 250, 102 S.Ct. 252, 261, 263, 70 L.Ed.2d 419 (1981); *see also In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India in December, 1984*, 809 F.2d 195, 205–06 (2d Cir.) (circuit court reversed district judge's imposition of the Federal Rules of Civil Procedure's broad discovery rules on defendant even though judge was attempting to adjust for the more limited discovery provided under foreign law), *cert. denied*, 484 U.S. 871, 108 S.Ct. 199, 98 L.Ed.2d 150

(1987). We cannot say that plaintiff would be denied an opportunity to be heard in a French forum. *See* Defendant's Reply Memorandum at 11 & n. 3. Thus, finding the French forum, the Tribunal de Grande Instance, to be an adequate alternative, we decline to accept plaintiff's invitation not to dismiss this action until she has had further discovery here. *See* Pltf. Mem. at 26.[7]

We further note that the litigants' interests in an expeditious and economical resolution of their disagreements will surely be served if this dispute were resolved in conjunction with the now pending arbitration in France. This certainly would accommodate plaintiff's first choice of arbitration, see Diamond Aff. at 5, and would alleviate the expense and duplication of having two different proceedings pending simultaneously concerning the division of the assets of the Estate of Max Ernst. Even if the parties cannot so agree, we believe that it will still be more economical, and eminently more sensible, for the parties to adjudicate their disputes in France, in a French court, that will hear largely French witnesses, and receive and examine French exhibits and documents in the French language, and apply French inheritance laws. Accordingly, we hold that the "private interest" factors weigh in favor of dismissing the action on the ground of forum non conveniens.

For all of the foregoing reasons, we conclude that France is the appropriate forum that "will best serve the convenience of the parties and the ends of justice." Furthermore, we also conclude that the parties have selected France as the forum to hear this dispute, a selection we do not find to be oppressive to either party. Accordingly, the complaint is hereby dismissed, and the Clerk of the Court is directed to enter this Order on the records of this Court.

SO ORDERED.

---

7. In addition, plaintiff should not be heard to complain that France, the forum her predecessor consented to, is inadequate to adjudicate her claims, since they arise out of rights created only by that country's laws.