Mary C. DOE, as Proposed Administratrix of the Estate of James C. Doe, Deceased, last names being fictitious, Plaintiffs,

v.

HYLAND THERAPEUTICS DIVISION, et al., Defendants.

John M. DOE and Barbara M. Doe, et al., Plaintiffs,

v.

HYLAND THERAPEUTICS DIVISION, et al., Defendants.

Nos. 92 Civ. 1802 (WCC), 92 Civ. 3381 (WCC).

United States District Court, S.D. New York.

Dec. 1, 1992.

Harley & Browne by Robert G. Harley, Lois E. Freedman, New York City, for plaintiffs, Doe.

Sidley & Austin by Steven D. Meyers, New York City, Sidley & Austin, Douglas Fuson, Sara J. Gourley, Chicago, IL, of counsel, for defendant Armour Pharmaceutical Co.

Dechert Price & Rhoads by Howard S. Schrader, New York City (Dechert Price & Rhoads, Richard L. Berkman, Susan L. Oppenheimer, Philadelphia, PA, of counsel), for defendant Baxter Healthcare Corp.

Heidell, Pittoni, Murphy & Bach, P.C. by Charles L. Bach, Jr., New York City (O'Connor, Cohn, Dillon & Barr, Duncan Barr, Susan J. Reifel, San Francisco, CA, of counsel), for defendant Miles Laboratories.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

These two cases arise from the tragic injuries sustained when a number of Irish patients suffering from congenital hemophilia were infused with blood products contaminated by the human immunodeficiency virus ("HIV"). Both cases are here on identical motions to dismiss on grounds of *forum non conveniens.* Plaintiff Mary C. Doe, a citizen and resident of Ireland, asserts a derivative cause of action against defendants for the pain, suffering, and wrongful death endured by her brother, James C. Doe, who received HIV-contaminated blood products in Ireland. Plaintiffs in the *John M. Doe and Barbara M. Doe* multiple plaintiff action are eighty-one Irish citizens [1], whose complaints similarly stem from the alleged administration of HIV-contaminated blood products in Ireland.

Hyland Therapeutics Division, Travenol Laboratories, Inc., now known as Baxter Healthcare Corp., ("Baxter"), Armour Pharmaceutical Company, Inc., ("Armour"), and Miles Laboratories, Inc., ("Miles"), defendants in both actions, move to dismiss on the grounds of *forum non conveniens,* and lack of standing to sue. Due to the identical nature of the issues raised, the two actions are consolidated for purposes of deciding defendants' motions to dismiss. Subject to the conditions set forth below, the motion to dismiss for *forum non conveniens* is granted in each case, without prejudice to renewal if the conditions are not met. The suits may be brought in Ireland where each of the plaintiffs resides, and where the alleged injuries occurred.[2]

## BACKGROUND

Both suits are product liability actions based on the allegedly negligent collection, manufacturing, processing, labelling, mar-

---

1. John Doe Def. Mem. in Supp. at 3. Plaintiffs' counsel indicates that the claims on behalf of Catherine T. Doe are being discontinued. John Doe Pl. Mem. in Opp. at 17. We are as yet unaware of any action taken in this Court to affect dismissal of said plaintiffs' claims, and, therefore, include her among the claimants in the *John M. Doe and Barbara M. Doe* multiple plaintiff action.

2. Due to our dismissal of these cases on *forum non conveniens* grounds, we need not decide the question whether plaintiffs lack standing to sue.

keting, promotion, distribution, and sale, by defendants, of HIV-contaminated blood products. Compl. of Mary C. Doe ("Mary Doe Compl.") at ¶ 3–9; Compl. of John M. Doe and Barbara M. Doe ("John Doe Compl.") at ¶ 2–8. All the individuals named or represented as plaintiffs in both cases are citizens and residents of Ireland. Aff. of Robert Harley, Attny. for Pl. at 4; John Doe Def. Mem. in Supp. at 5. Each alleges that patients who received medical care in Ireland became infected with HIV from contaminated blood clotting factor concentrates, including a clotting factor known as Factor VIII, manufactured and distributed to third parties by one or more of the defendants, and subsequently administered to patients to ameliorate the effects of congenital hemophilia. Mary Doe Compl. at ¶ 3–9; John Doe Compl. at ¶ 2–8. Plaintiffs are unable to identify the particular defendant, or defendants, who supplied the blood products that caused the HIV infection. Mary Doe Compl. at ¶ 5, John Doe Compl. at ¶ 8.

All the named plaintiffs that allege infection by HIV-contaminated blood products supplied by defendants[3] received medical treatment for hemophilia in Ireland, were administered blood clotting factor concentrates in Ireland, and sustained the alleged injuries in Ireland. Harley Aff. at 4; John Doe Def. Mem. in Supp. at 5. Neither complaint alleges any contacts between plaintiffs and this forum, other than the fact that counsel for plaintiffs are located in New York.

While all the defendants "do business" in New York, each is incorporated and maintains its principal place of business elsewhere in the United States. Defendant Miles is incorporated under the laws of Indiana, with its principal place of business in Pennsylvania. Aff. of Roger Moders-

bach, Assoc. Counsel, Biological Products Pharmaceutical Division, Miles Inc., at ¶ 2. Defendant Baxter is incorporated under the laws of Delaware, with its principal place of business in Illinois. Aff. of J. Patrick Fitzsimmons, Assistant Sec., Baxter Healthcare Corp., at ¶ 2. Defendant Armour is incorporated under the laws of Delaware, (Aff. of Kenneth Pina, Assoc. Gen. Counsel and Assistant Sec. of Rhone–Poulenc Rorer, Inc., (Armour's parent corporation), at ¶ 3), with its principal place of business in Pennsylvania. Mary Doe Def. Mem. in Supp. at 6–7. Presumably, the defendants' processing of Factor VIII is subject to the applicable U.S. rules and regulations.[4] None of the defendants processes Factor VIII concentrate in Ireland, and none of the defendants has indicated collection of any blood products in Ireland. Harley Aff. at 7.

All three defendants process Factor VIII concentrate in the United States in places other than New York. Defendant Miles processes Factor VIII concentrate in either California, or North Carolina. Modersbach Aff. at ¶ 4. Defendant Armour processes Factor VIII concentrate in Illinois, and possibly also in Eschwege, Germany. Pina Aff. at ¶ 3. Defendant Baxter processes Factor VIII concentrate through a division located in California. Fitzsimmons Aff. at ¶ 2.

Defendant Armour collects and tests the plasma derivatives used in processing Factor VIII, and also heat treats Factor VIII at locations in the midwestern and southeastern United States.[5] The two other defendants, Baxter and Miles, have failed to set forth where they collect, test, and heat treat blood products, other than that all such activities occur at locations other than New York.[6] Fitzsimmons Aff. at ¶ 3; Mod-

---

**3.** Defendants dispute the source of plaintiffs' HIV infection, and suggest that one or more of the plaintiffs may also have been treated with other blood products not supplied by any of the named defendants, such as whole blood or cryoprecipitate. John Doe Def. Mem. in Supp. at 5, n. 4.

**4.** While only defendant Armour concedes it is subject to the pertinent U.S. rules and regulations, it is likely that defendants Miles and Bax-

ter are also subject to these same regulations, as they also process blood products, including Factor VIII, in the United States.

**5.** Defendant Armour may also heat treat Factor VIII in Eschwege, Germany. Harley Aff. at 6.

**6.** Because defendants Miles and Baxter admit to processing Factor VIII in the United States, it seems likely that their blood products are collected and tested in the United States also.

ersbach Aff. at ¶ 3, 5, 14. All three defendants also package and label Factor VIII in locations other than New York. Affidavit of Charles Bach, Attny. for Def., at ¶ 21. Each defendant has affiliates in the United Kingdom, or Ireland, that bear responsibility for the marketing and distribution of Factor VIII concentrate in Ireland.[7]

At all relevant times, the administration of blood products supplied by defendants for use in Ireland occurred through third parties, including hospitals, clinics, apothecaries, or other health care providers in Ireland. Mary Doe Compl. at ¶ 4; John Doe Compl. at ¶ 3, 48; Bach Aff. at ¶ 16. The distribution of Factor VIII by defendants is subject to the applicable rules and procedures of the Republic of Ireland.

Plaintiffs' counsel have indicated that the circumstances of both cases currently before this Court, as they relate to the *forum non conveniens* determination, are identical to those presented in *Dowling v. Hyland Therapeutics*, 767 F.Supp. 57 (S.D.N.Y.1991). John Doe Pl. Mem. in Supp. at 3. All three actions name the same three defendants, and involve similar allegations of negligence that resulted in HIV infection of patients under treatment for hemophilia in Ireland. *See Dowling,* 767 F.Supp. at 58; Mary Doe Compl. at ¶ 3–9; John Doe Compl. at ¶ 2–8. The parties in all three actions are respectively represented by the same attorneys. In *Dowling,* the Court dismissed the action from this District on grounds of *forum non conveniens,* conditioned upon defendants' compliance with four enumerated provisions. *Dowling,* 767 F.Supp. at 60. The conditions imposed upon defendants were:

1. that defendants consent to suit and acceptance of process in any suit plaintiffs file in Ireland on the claims that are the subject of the instant suit;

2. that defendants waive any statute of limitations defense that may be available to them in Ireland;

3. that defendants will afford plaintiffs discovery in the United States by any of the methods permitted by Rule 26 of the Federal Rules of Civil Procedure for actions conducted in the United States, and that defendants agree to make available for discovery and for trial, and at their own expense, any documents, records, or witnesses, including retired employees, within their control that are needed for the fair adjudication of the plaintiffs claims in Ireland;

4. that defendants will not act to prevent plaintiffs from returning to this Court if the Court in Ireland declines to accept jurisdiction of this action, if it is filed in Ireland within 60 days of the entry of this Order.

*Dowling,* 767 F.Supp. at 60.

Subsequent to the decision in *Dowling,* plaintiffs' counsel brought these two suits in the New York State Supreme Court, and defendants removed to this Court pursuant to 28 U.S.C. § 1441. Plaintiffs' counsel acknowledges that the instant cases involve identical issues as to *forum non conveniens* as those addressed in the *Dowling* Court's conditional dismissal order. Mary Doe Pl. Mem. in Supp. at 3; John Doe Pl. Mem. in Supp. at 3. Despite the dismissal in *Dowling,* plaintiffs insist this is an appropriate forum in which to litigate their claims, and thus seek, initially, a result contrary to *Dowling* that will permit them to maintain their respective actions here. If this Court does dismiss due to *forum non conveniens,* plaintiffs submit, alternatively, that conditions identical to those in *Dowling* must be imposed to "permit uniformity of decisions within the jurisdiction of this District Court." Mary Doe Pl. Mem. in Supp. at 3. Defendants, on the

---

**7.** Miles Ltd., a wholly owned subsidiary of defendant Miles, incorporated under the laws of the United Kingdom and maintaining its principal place of business in England, conducts all labeling, marketing, and promotion of Factor VIII distributed in Ireland. Modersbach Aff. at ¶ 7–12. Baxter Healthcare Ltd., an affiliate of defendant Baxter, incorporated under the laws of the United Kingdom and maintaining its principal place of business in Ireland, markets and distributes Factor VIII in Ireland. Fitzsimmons Aff. at ¶ 4–5. Armour Pharmaceutical Company Ltd., an affiliate of defendant Armour, incorporated under the laws of the United Kingdom and maintaining its principal place of business in England, distributes Factor VIII in Ireland. Pina Aff. at ¶ 3–4.

other hand, seek an unconditional dismissal of both actions.

## DISCUSSION

The doctrine of *forum non conveniens* permits a court, in its discretion, "to resist the imposition upon its jurisdiction," even though jurisdiction may be lawfully exercised and venue technically proper, where the convenience of the parties and the interests of justice favor dismissal. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947); *Koster v. Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 527, 67 S.Ct. 828, 833, 91 L.Ed. 1067 (1947). Dismissal is appropriate where "trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249, 102 S.Ct. 252, 262, 70 L.Ed.2d 419 (1981). In exercising its discretion, a court is steered by the guideposts established by the Supreme Court in *Gilbert*, 330 U.S. at 508–09, 67 S.Ct. at 843, and reinforced in *Piper*, 454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6, that direct a court to examine certain "private interest factors" relating to the convenience of the litigants, and certain "public interest factors" relating to the convenience of the forum and the ends of justice. *Gilbert*, 330 U.S. at 508–09, 67 S.Ct. at 843; *Alcoa S.S. Co., Inc. v. M/V Nordic Regent*, 654 F.2d 147, 150–51 and n. 4 (2d Cir.) (en banc), *cert. denied*, 449 U.S. 890, 101 S.Ct. 248, 66 L.Ed.2d 116 (1980); *Monsanto Int'l v. Hanjin Container Lines Ltd.*, 770 F.Supp. 832, 835 (S.D.N.Y. 1991).

Because the doctrine of *forum non conveniens* presupposes at least two forums in which the action may proceed, the court must initially determine whether an adequate alternative forum in fact exists. *Gilbert*, 330 U.S. at 506–07, 67 S.Ct. at 842; *Piper* 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22. Once the availability of an alternate forum is established, the court weighs, as a matter within its sound discretion, the pertinent private and public interest factors to assess whether dismissal from the present forum is appropriate.

*Piper*, 454 U.S. at 256, 102 S.Ct. at 266; *In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India in December 1984*, 634 F.Supp. 842, 845 (S.D.N.Y.1986), *aff'd as mod'fd by*, 809 F.2d 195 (2d Cir.), *cert. denied*, 484 U.S. 871, 108 S.Ct. 199, 98 L.Ed.2d 150 (1987). Application of the factors enunciated in *Gilbert* varies depending on the unique facts of each case; the inquiry is intended to be flexible, with no particular emphasis on any single factor. *See Ernst v. Ernst*, 722 F.Supp. 61, 64 (S.D.N.Y.1989) (citing *Piper*, 454 U.S. at 249–50, 102 S.Ct. at 262–63).

Defendants bear the overall burden of showing that the circumstances warrant dismissal. *Schertenleib v. Traum*, 589 F.2d 1156, 1150 (2d Cir.1978). Ordinarily, a strong presumption rests in favor of a plaintiff's choice of forum, which is overcome only where public and private interest factors point clearly towards trial in an alternate forum. *Gilbert*, 330 U.S. at 508, 67 S.Ct. at 843. The presumption is routinely granted less weight when the plaintiff is a foreign citizen. *See Piper*, 454 U.S. at 255–56 and n. 23, 102 S.Ct. at 265–66 and n. 23 (finding reasonable the practice of giving less deference to a foreign plaintiff's choice of forum); *see also In re Union Carbide*, 809 F.2d at 202 (little or no deference paid to plaintiffs' choice of U.S. forum where most of the 200,000 plaintiffs were Indian citizens); *But see Pain v. United Technologies Corp.*, 637 F.2d 775, 795–97 (D.C.Cir.1980), *cert. denied*, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981) (questioning the significance accorded to citizenship of parties in *forum non conveniens* inquiry).

Plaintiffs have not questioned the proposition that their choice of forum deserves a lesser degree of deference than that given to American citizens. Mary Doe Pl. Mem. in Supp. at 19. Interestingly, it is defendants who suggest that plaintiffs' choice of forum be granted the same deference as that conferred upon *nonresident* American citizens. John Doe Def. Mem. in Supp. at 7 n. 5. Defendants point to *Oxley v. Wyeth Lab., Inc.*, No. 91–1285, 1992 WL 116308 at *3 (E.D.Pa. May 20, 1992), which held that

Irish plaintiffs were to be given the same deference as to choice of forum as that accorded to nonresident United States citizens, pursuant to the terms of the Treaty of Friendship, Commerce and Navigation, January 21, 1950, to which the United States and the Republic of Ireland are parties. 1992 WL 116308 at *3 and n. 2 (citing national treatment clause in treaty).[8] Where an "equal access to courts" provision exists in a treaty, the Second Circuit has held that a foreign plaintiff's right to sue in a United States forum is equal to that of a United States citizen. *M/V Nordic Regent,* 654 F.2d at 152–53 and n. 6; *Farmanfarmaian v. Gulf Oil Corp.,* 588 F.2d 880, 882 (2d Cir.1978). However, the degree of deference to plaintiffs' choice required under the terms of the U.S.–Irish Treaty need not be resolved here. Even if the presumption in favor of plaintiffs' choice of forum were applied with full force to plaintiffs' benefit, the private and public interest factors would still weigh heavily in favor of dismissal.[9]

## I. Existence of An Alternative Forum

 Plaintiffs contend that Ireland represents an inadequate forum because the discovery devices available are not as extensive as those available in the United States, and therefore dismissal in favor of Ireland is inappropriate. Mary Doe Pl. Mem. in Supp. at 19; John Doe Pl. Mem. in Supp. at 16. According to plaintiffs, Irish discovery rules are unsuitable for products liability litigation because discovery is limited to documents, and depositions are not permitted. *Id.*

 Ordinarily, the requisite of an adequate alternate forum is satisfied where the defendant is "amenable to process" in the alternate jurisdiction. *Piper,* 454 U.S. at 254–55 and n. 22, 102 S.Ct. at 265–66 and n. 22. Additionally, a forum may be considered inadequate, in certain "rare circumstances," where the remedy it provides is "so clearly inadequate or unsatisfactory that it is no remedy at all." *Id.* With regard to being amenable to process, defendants have declared their willingness to consent to the jurisdiction of Irish courts. Mary Doe Pl. Mem. in Supp. at 12; John Doe Pl. Mem. in Supp. at 11. Moreover, this Court can grant defendants' motion to dismiss conditioned upon defendants accepting jurisdiction and service of process in suits filed in Ireland. *See In re Union Carbide,* 809 F.2d at 203 (similar conditions accompanying dismissal not unusual). With regard to plaintiffs being deprived of any remedy in Ireland, plaintiffs' argument concerning deficient discovery methods does not allege the intrinsic inadequacy of the Irish legal system, or the utter futility of recourse to Irish law. *See Carlenstolpe v. Merck & Co., Inc.* 638 F.Supp. 901, 905 (S.D.N.Y.1986), *app. dism.,* 819 F.2d 33 (2d Cir.1987). Whatever deleterious affect Ireland's pre-trial procedures may have on

---

**8.** Article VI of the Treaty provides:
Nationals and companies of either Party shall be accorded, within the territories of the other Party, national treatment with respect to: (c) having access to the courts of justice and to administration tribunals and agencies, in all degrees of jurisdiction, both in pursuit and in defense of their rights. 1 U.S.T. 785, T.I.A.S. No. 2155.

**9.** We do note that the practice of according talismanic significance to a plaintiff's citizenship seems contrary to the rationale underlying *forum non conveniens* analysis. The primary concern in a *forum non conveniens* inquiry is the convenience of the parties and the court. In this context, citizenship serves merely as one of the indicia of residence, which is only one of the factors used in determining convenience. Where a plaintiff brings suit in a distant forum, a court can infer that motives other than convenience influenced the decision, just as easily when the plaintiff is a resident of a distant U.S. state, as when the plaintiff is a resident of a foreign country. *Cf. Piper,* 454 U.S. at 255–56, 102 S.Ct. at 265–66 (when plaintiff is foreign, assumption that forum was chosen due to convenience is less reasonable). Moreover, circumstances may indicate that the chosen forum, though foreign, is still more convenient to the plaintiff than the home forum. Citizenship can thus function only as evidence of convenience that must be evaluated under the *Gilbert* private interest factors. To focus on citizenship as a measure of the presumptive weight affixed to plaintiffs' choice, is to inject a mechanical element into an inquiry intended to be flexible, and oriented towards the unique circumstances of each case. *See M/V Nordic Regent,* 654 F.2d at 154; *Pain,* 637 F.2d at 797; *Jennings v. Boeing Co.,* 660 F.Supp. 796, 804 and n. 10 (E.D.Pa. 1987).

plaintiffs' claims, they cannot be argued to leave plaintiffs with no remedy at all.

▇▇▇ Thus, despite plaintiffs' grievances with Irish discovery procedures, this Court finds Ireland a sufficiently suitable forum to hear plaintiffs' claims. Other courts have already determined that Ireland offers an adequate forum for the type of products liability litigation presented by the two cases currently before this Court. *Dowling*, 767 F.Supp. at 58–60 (dismissing suit virtually identical to present actions in favor of Irish forum); *Oxley*, 1992 WL 116308 at *2 and n. 2 (finding Ireland an adequate forum for pharmaceutical products liability action, after reviewing affidavit of experienced Irish Solicitor). More importantly, it is well established that the adequacy of an alternate forum does not hinge on the possibility that it would subject the plaintiffs to laws less favorable to them. *See, e.g. Piper*, 454 U.S. at 247, 102 S.Ct. at 261 (possibility of a change in substantive law not given conclusive or even substantial weight in *forum non conveniens* inquiry); *Alcoa Steamship Co., Inc. v. M/V Nordic Regent*, 453 F.Supp. 10, 13 (S.D.N.Y.1978), *aff'd*, 654 F.2d 147 (2d Cir.) (en banc), *cert. denied*, 449 U.S. 890, 101 S.Ct. 248, 66 L.Ed.2d 116 (1980). The doctrine of *forum non conveniens* does not prevent a court from ceding jurisdiction to another court merely because the alternate forum's procedures differ, or are less favorable to the plaintiffs than those of the chosen forum. *Ernst v. Ernst*, 722 F.Supp. at 67 (citing *Piper*, 454 U.S. at 247, 102 S.Ct. at 261; *In re Union Carbide*, 809 F.2d at 205). Consequently, the fact that Ireland's procedures provide less extensive discovery devices, or otherwise limit the scope of discovery, does not constitute a colorable basis for the conclusion that Ireland is less than an adequate forum. *See In re Union Carbide*, 809 F.2d at 205–06 (Indian forum not deemed inadequate despite more limited discovery provided under Indian law); *Ernst*, 722 F.Supp. at 67 (French forum not inadequate, although discovery methods available noted to be less extensive than those in the U.S.).

On the contrary, denying dismissal due to the more limited nature of Irish discovery procedures, as plaintiffs suggest, would lead precisely to the "practical problems" foreseen by the Supreme Court in *Piper*. 454 U.S. at 251–52, 102 S.Ct. at 263–64 (increased congestion in U.S. courts if dismissal prevented due to unfavorable change in law). Because of the extensive nature of American discovery, many instances would arise where dismissal, though appropriate from the perspective of convenience, could be precluded because the alternate forum did not offer comparable procedures. *See id.* at n. 18 (listing extensive scope of discovery one reason for the appeal of American courts to foreign plaintiffs). "American courts ... would become even more attractive. The flow of litigation into the United States would increase and further congest already crowded courts." *Id.* In short, given the clear direction of the precedents on this issue, this Court will not deny dismissal on the basis that Ireland represents an unsuitable forum to vindicate plaintiffs' claims.

## II. Private Interest Factors

▇▇▇ The considerations articulated by the Supreme Court pertaining to the private interests of the litigants include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Piper*, 454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6 (quoting *Gilbert*, 330 U.S. at 508, 67 S.Ct. at 843).

The balance of convenience with respect to the relative ease of access to sources of proof weighs on the side of dismissal in favor of an Irish forum. Remarkably, plaintiffs have failed to point to the existence of any evidence within this forum that is materially related to plaintiffs' causes of action. While defendants "do business in New York," it is evident that the places where they collect, test, heat treat, and process the blood products in question, as well as where they are incorporated, and maintain their principal places of business, are located elsewhere in the Unit-

ed States. Though plaintiffs protest that defendants have failed to provide sufficient information regarding their activities relevant to this action, it is clear from the information provided that the activities giving rise to plaintiffs' claims—namely negligence in the collection, processing, testing, labelling, marketing, promotion, distribution and sale of blood products—took place in locations other than New York.

Nevertheless, we agree with plaintiffs that this forum offers easier access to sources of proof relating to the question whether defendants' products were negligently manufactured. All three defendants admit to processing Factor VIII concentrate in the United States, and it is likely they collect, test, and heat treat their blood products here also.[10] Additionally, evidence relating to "notice of HIV contamination" and the alleged "failure to warn" is also likely located within the United States. *See* Mary Doe Pl. Mem. in Supp. at 9. As the locus of allegedly culpable conduct on the part of defendants lies in the United States, it is hardly a leap of faith to conclude that New York, rather than Ireland, offers easier access to proof of such conduct. Notably, however, much of the evidence, in the form of documents and witnesses, tending to reveal any negligence on defendants' part is apt to be within defendants' control, rather than that of third parties. *See Dowling*, 767 F.Supp. at 59. Such evidence consequently will be subject to the compulsory process of whatever court hears this controversy. *Ledingham v. Parke–Davis Div. of Warner–Lambert Co.*, 628 F.Supp. 1447, 1450–51 (E.D.N.Y.1986). Thus, though located closer to New York, this evidence will not be inaccessible from an Irish forum.

On the other hand, evidence of defendants' negligence constitutes only one element of the case plaintiffs must present to sustain their burden of proof. Plaintiffs will also need to establish proof of causa-

tion, product identification, injury, and damages; evidence relating to these elements will be much more accessible from an Irish forum. *See de Melo v. Lederle Lab. Div. of Am. Cyanamid Corp.*, 801 F.2d 1058, 1062–63 (8th Cir.1986) (though proof of tortious conduct relating to primary claim located in New York, dismissal warranted where evidence relevant to injury, damages and defendant's defenses located in Brazil); *Harrison v. Wyeth Lab. Div. of Am. Home Products Corp.*, 510 F.Supp. 1, 8 (E.D.Pa.1980), *aff'd*, 676 F.2d 685 (3d Cir.1982) (though tortious conduct occurred in forum of plaintiffs' choice, dismissal warranted where prescription, sale, and ingestion of drugs in question, as well as injuries and deaths occurred elsewhere).

All the evidence relating to the patients' medical history and treatment is located in Ireland. The physicians who prescribed blood clotting products, as well as treating and consulting physicians, medical personnel, other health care providers such as hospitals and clinics, and experts who can testify as to local medical community practices, are all located in Ireland. Because each of the Irish patients suffered from hemophilia, medical records of their treatment, blood or tissue samples drawn or tested, documents identifying all the blood products administered, and prescriptions labelling the medication and infusion supplies provided by Irish facilities, are likely to be considerable in volume.[11] Such evidence will be essential to the inquiry into product identification, and source of HIV infection. While plaintiffs' counsel bluntly assert that the claims of all plaintiffs are "identical" with regard to causation (John Doe Pl. Mem. in Supp. at 11), we find that establishing a nexus between defendants' negligence and plaintiffs' injuries will require evidence regarding each patient's use of blood clotting products, use of a particular defendant's Factor VIII concentrate, addi-

10. *See* n. 5 and accompanying text.

11. Plaintiffs' counsel insists that the amount of medical evidence will be "limited" because the number of physicians and healthcare facilities equipped to treat hemophiliacs in Ireland are limited. John Doe Pl. Mem. in Supp. at 11. The limited number of physicians and facilities,

however, speaks nothing to the likelihood that each patient afflicted with congenital hemophilia may have an extensive and complicated medical history. More importantly, regardless of the "volume" of discovery at issue, plaintiffs' counsel cannot deny that evidence concerning medical treatment of every plaintiff is far easier to access from Ireland.

tional suppliers of blood products, the manner in which these products were administered, and the risk of exposure to other sources of HIV. Ireland undoubtedly offers easier access to all such information. Evidence relating to the potential liability of hospitals, clinics, pharmacists, and suppliers of equipment is also more readily accessible from Ireland. With regard to damages, plaintiffs do not dispute that the bulk of evidence relevant to determining plaintiffs' financial loss is located in Ireland. Access to the patients' family members, employers, friends, and neighbors, as well as to other non-party sources of information that may facilitate the assessment of damages, will be far easier from an Irish forum. Thus, after considering the location of evidence concerning all the issues presented by these cases, we find the scales of convenience with respect to ease of access to sources of proof tilt in favor of an Irish forum. *See Parke–Davis,* 628 F.Supp. at 1450 (vast majority of evidence on causation and damages located in Canada weighed heavily in favor of dismissal); *Jennings,* 660 F.Supp. at 805 (evidence relevant to damages located in alternate forum strong factor favoring dismissal); *Pain,* 637 F.2d at 790 (same).

With respect to the availability of compulsory process for attendance of unwilling witnesses, it is of considerable importance that litigation in New York would deprive defendants of compulsory process for substantial evidence in Ireland in the control of third parties. *See Fitzgerald v. Texaco, Inc.,* 521 F.2d 448, 451–52 (2d Cir.1975), *cert. denied,* 423 U.S. 1052, 96 S.Ct. 781, 46 L.Ed.2d 641 (1976) (lack of compulsory process over foreign witnesses a forceful factor favoring dismissal); *de Melo,* 801 F.2d at 1063 (same); *Parke–Davis,* 628 F.Supp. at 1450–51 (same). A substantial proportion of evidence in Ireland relevant to plaintiffs' claims and defendants' defenses rests in the possession of third parties, and is therefore beyond the subpoena power of an American Court. *See Dowling,* 767 F.Supp. at 59. Conversely, were litigation to proceed in Ireland, the unavailability of

compulsory process over third parties in the United States would pose a less significant obstacle; as already indicated, most of the essential liability evidence situated in the United States is within defendants' control, and thus reachable through the orders of an Irish court. *See id.*

Permitting plaintiffs to pursue their claims in this forum could also deprive defendants of the possibility of impleading third parties in Ireland potentially involved in this controversy. Defendants have indicated the prospect of third-party action against alternate providers of antihemophilic factor concentrate, whole blood, or cryoprecipitate,[12] as well as others whose negligence may have contributed to plaintiffs' injuries. John Doe Def. Mem. in Reply at 7. While plaintiffs' counsel assert that the "hypothetical suggestion" of possible impleader "should not be afforded much weight" by this Court (Mary Doe. Pl. Mem. in Supp. at 14), the weight of authority persuades us to the contrary. It is well established that inability to implead possible third party defendants is a factor weighing against the retention of jurisdiction. *Piper,* 454 U.S. at 259, 102 S.Ct. at 267; *Fitzgerald,* 521 F.2d at 453; *Pain,* 637 F.2d at 790; *M/V Nordic Regent,* 453 F.Supp. at 13. Though defendants could initiate suit in Ireland for indemnity or contribution from potential third party defendants if this Court were to retain these actions, the convenience of resolving all claims in one court in Ireland is another consideration militating in favor of dismissal. *See Piper,* 454 U.S. at 259, 102 S.Ct. at 267.

Plaintiffs rely on *Hodson v. A.H. Robins Co., Inc.,* 528 F.Supp. 809 (E.D.Va.1981), *aff'd,* 715 F.2d 142 (4th Cir.1983), and *Carlenstolpe v. Merck & Co., Inc.,* 638 F.Supp. 901 (S.D.N.Y.1986), *app. dism.,* 819 F.2d 33 (2d Cir.1987), for their contention that the private interest factors favor litigation in this forum. Both cases are readily distinguishable. *Hodson* involved a suit in Virginia, brought by English plaintiffs injured by the use of contraceptive devices manu-

---

12. Defendants have furnished an *Irish Times* article suggesting that products manufactured by the Blood Transfusion Service Board, located in Ireland, may be an alternate source of HIV infection. Mary Doe Def. Mem. in Supp., Exhibit I.

factured in the United States and prescribed in the United Kingdom. 528 F.Supp. at 809. Unlike the instant action, the primary defendant in *Hodson* was incorporated and maintained its principal place of business in the plaintiffs' chosen forum; evidence concerning the manufacture and testing of the device was located in or near the forum; and material relating to the marketing and promotion of the device was situated within the forum. *Id.* at 820. Additionally, evidence in the alternate forum relevant to the issue of causation was less substantial in *Hodson* than in the instant cases. *Id.* at 821. Finally, the likelihood that impleader of third parties would be necessary was insufficiently supported in *Hodson* to be given much weight. *Id.* at 822.[13]

*Carlenstolpe* involved a suit brought in this District by a Swedish opera singer suffering injuries from a hepatitis vaccine manufactured by the defendant's subsidiary in Pennsylvania and administered in Sweden. 638 F.Supp. at 903. Unlike the current controversies, the defendant in *Carlenstolpe* did not adequately allege a conceivable alternate source of injury in Sweden, virtually conceding that its vaccine caused the plaintiff's condition. *Id.* at 906. Even without the defendant's concession on causation, the Court found that the main causation witnesses would be experts testifying on the properties of the vaccine manufactured in the United States, rather than individuals personally involved in the circumstances surrounding the injury in Sweden. *Id.* The defendant in *Carlenstolpe* did not contend that impleading third parties was a possibility; additionally, the Court found that potential witnesses on the issue of damages were situated in the chosen forum. *Id.* Consequently, neither *Hodson* nor *Carlenstolpe* involved facts sufficiently analogous to those underlying the current controversies to dissuade us from the conclusion that the private interest factors favor dismissal.

 Plaintiffs argue that the cases relied on by defendants, including *Piper v.*

*Reyno, Fitzgerald v. Texaco,* and *Alcoa Steamship Co., Inc. v. M/V Nordic Regent,* are not controlling because they arose out of aviation or maritime accidents and are thus drastically different from suits stemming from product liability. We agree that the facts and circumstances affecting a *forum non conveniens* inquiry in products liability cases may contrast sharply from those in accident cases. The legal principles which guide any *forum non conveniens* examination, however, and indeed the factors with which this Court has drawn its analysis, have remained the same regardless of the nature of the injury underlying a plaintiff's cause of action. *Compare Piper,* 454 U.S. 235, 102 S.Ct. 252 (dismissal of action stemming from airplane crash based on application of the *Gilbert* factors) *with Harrison v. Wyeth Lab.,* 510 F.Supp. 1 (dismissal of pharmaceutical product liability action based on analysis under the *Gilbert* factors). It is by drawing from these well established principles and freely applying them to the current circumstances, rather than by mechanically drawing analogies to cases whose facts are markedly distinguishable, that this Court concludes that the factors it must balance pertaining to the private interest of the litigants weigh heavily on the side of dismissal.

### III. Public Interest Factors

The considerations articulated by the Supreme Court bearing on the public interest include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper,* 454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6 (quoting *Gilbert,* 330 U.S. at 508, 67 S.Ct. at 843).

---

**13.** Notably, while the Circuit Court in *Hodson* affirmed the denial of defendants' motion to dismiss because it found the District Court's decision not so arbitrary as to constitute abuse of discretion, the Circuit Court also suggested that it may, in the first instance, have reached the opposite conclusion.

The factors pertaining to the burden imposed on this forum by retention of these disputes point sharply towards dismissal. Perhaps the most glaring relevant fact is the frail connection between plaintiffs' claims and this forum. All plaintiffs reside in Ireland; all the alleged injuries and attendant damages were sustained in Ireland; the tortious conduct giving rise to plaintiffs' claims occurred in areas outside this forum; and none of the defendants is incorporated, or maintains its principal place of business, within this forum. Only two details link this controversy to this District: each of the defendants "does business" here, and plaintiffs' counsel are located here. Such tenuous contacts do not justify the significant administrative costs that stand to be levied upon this Court, or the burden of jury duty expected to be thrust upon a community substantially distanced from the controversy. *See Pain*, 637 F.2d at 792 (burden of administrative costs and jury duty unwarranted where controversy lacked significant contacts with forum); *de Melo*, 801 F.2d at 1064 (same). Trial of plaintiffs' claims will no doubt be involved and lengthy, demanding an enormous commitment of judicial time and resources. That this Court sits in "one of the busiest districts in the country," *Ernst*, 722 F.Supp. at 65 n. 4 (citing *In re Union Carbide*, 634 F.Supp. at 861), is undeniable, making this one of the "congested centers" of litigation referred to in *Gilbert*, 330 U.S. at 508, 67 S.Ct. at 843. *See In re Union Carbide*, 634 F.Supp. at 861. The need to guard our docket from disputes with little connection to this forum is clear, and perhaps more accented in this instance where plaintiffs' counsel make it transparent that retaining these actions may induce the initiation of additional suits with an equally fragile nexus to this forum.[14] *See Jennings*, 660 F.Supp. at 807 (fear of encouraging identical cases adding to court congestion a factor favoring dismissal). Thus, the difficulties that arise "when litigation is piled up in congested centers instead of being handled at its origins," *Gilbert*, 330

U.S. at 508, 67 S.Ct. at 843, suggest that the burden of these cases be centered on a court with more meaningful contacts with these controversies.

With regard to Ireland's interest in having localized controversies decided in an Irish forum, plaintiffs' respond that this forum's stake in these suits is equally substantial. As none of the tortious acts at issue is alleged to have occurred within this forum, our interest is purportedly rooted in the general "American regulatory interest in this litigation" based on defendants' processing of blood products within the United States, and in any American forum's desire to retain litigation related to "the worldwide AIDS epidemic" that involves a company "doing business" within that forum. Mary Doe Pl. Mem. in Supp. at 21–22.; *But cf. Hodson*, 528 F.Supp. at 823 (strong local interest based on injury causing device being manufactured in forum chosen, and defendant being incorporated and principally located in forum); *Lake v. Richardson–Merrell, Inc.*, 538 F.Supp. 262, 274–75 and n. 17 (N.D. Ohio 1982) (sufficient local interest to retain action because defendant headquartered in forum chosen and tortious acts all occurred within forum). Plaintiffs cite *Carlenstolpe v. Merck*, 638 F.Supp. 901, 909 (S.D.N.Y.1986), for the proposition that:

> (A)n American forum has a significant or equal interest to that of a foreign forum in litigation involving foreign plaintiffs and defendant American pharmaceutical corporations '... where an allegedly defective drug has been developed, tested and manufactured in the United States, and is being distributed to, and presumably used by American citizens ...'

Mary Doe Pl. Mem. in Supp. at 20.

Plaintiffs' dependance on *Carlenstolpe* may not be appropriate. In *Carlenstolpe*, a single Swedish plaintiff suffered injuries from an American manufactured hepatitis vaccine, where the Swedish government licensed the vaccine in reliance on information provided to the United States Food and

---

**14.** To date, plaintiffs' counsel has brought three such cases (involving a total of eighty-four plaintiffs) in New York, despite the fact that the first suit was dismissed on *forum non conveniens* grounds. Given the circumstances surrounding these claims, and the large number of Irish patients suffering similar injuries, the possibility of further suits seems hardly remote.

Drug Administration (and, seemingly, on the fact of U.S. FDA approval); where the warnings and descriptive details furnished by Swedish agencies were based on this same information; and where no independent testing was performed by Swedish public or private entities. *See Carlenstolpe,* 638 F.Supp. at 903, 909. The real issue, according to the Court, "was not some alleged manufacturing defect but rather the adequacy of the drug's design and testing, and of the basic information package supplied by its creator." *Id.* at 908. The Court found these facts "highlight the relative unremarkableness of the Swedish interest," noting specifically that this was not a case where litigation in the United States would "displace the foreign government's decision regarding the acceptability of the risks of certain drugs," or supplant an independent and distinct foreign cost-benefit analysis. *Id.* at 909. No such facts relating to the licensing, inspection, regulatory function, and risk analysis conducted by the appropriate Irish agencies are alleged in the present circumstances. Nor can Ireland's interest be termed "unremarkable" where a vast number of Irish hemophiliacs have similarly been tragically inflicted with HIV; where cases involving analogous claims are presently pending in Ireland, requiring Irish courts to formulate appropriate standards of liability; and where a fund was established by the Irish government to benefit patients who acquired HIV through the infusion of blood products.

 More decisively, we remain unconvinced because we are disinclined to accept the view advanced in *Carlenstolpe* regarding the force that an American forum's regulatory interest brings to the balance of competing public interests. Plaintiffs' position, promoted in cases such as *Carlenstolpe,*[15] stems from the rationale that an American court retains a strong regulatory and compensatory interest in formulating and implementing the standards of reasonable behavior that govern the production of pharmaceutical products within the United States. Where the flow of defective products into the stream of world commerce springs from the United States, an American court is deemed aptly interested, and ably situated, to regulate the imprudent conduct and provide the proper incentives for care in the future.

We find this rationale uncompelling because it does not assess fully the balance of competing public interests at stake, and consequently fails to provide the proper basis on which to evaluate the standards of behavior in the circumstances. This rationale underestimates the foreign forum's interest in this type of pharmaceutical products liability action—an interest that stems, not from the mere manufacture of products, but from their sale to the forum's market, and their use by its citizens. The forum whose market consumes the product must make its own determination as to the levels of safety and care required. That forum has a distinctive interest in explicating the controlling standards of behavior, and in enforcing its regulatory scheme. The standards of conduct implemented, and the level of damages assessed, will reflect the unique balance struck between the benefit each market derives from the product's use and the risks associated with that use; between the community's particular need for the product and its desire to protect its citizens from what it deems unreasonable risk. The forum's assessment will affect not merely the quality of the product, but also the price, quantity, and availability to its public. Such an assessment must remain the prerogative of the forum in which the product is used; each community faces distinct demands, and has unique concerns that make it peculiarly suited to make this judgment. We are ill-equipped to enunciate the optimal standards of safety or care for products sold in distant markets, and thus choose to refrain from imposing our determination of what constitutes appropriate behavior to circumstances with which

**15.** *See* 638 F.Supp. at 901; *Hodson,* 528 F.Supp. at 823; *Richardson–Merrell,* 538 F.Supp. at 274–75. The argument advanced in *Carlenstolpe* is admittedly contrary to the weight of authority on the issue. *Carlenstolpe,* 638 F.Supp. at 908–

09 (noting the court's "basic disagreement" with the various other courts who found the American forum's interest in a pharmaceutical products liability case to be negligible to that of the forum where the injury occurred).

we are not familiar. While imposing our presumably more stringent standards to deter tortious conduct within our borders could afford a higher degree of protection to the world community, such an approach would also ignore the unique significance of the foreign forum's interest in implementing its own risk-benefit analysis, informed by its knowledge of its community's competing needs, values, and concerns. Thus, we find that our "generalized interest" in regulating the flow of dangerously defective American pharmaceutical products into the stream of world commerce cannot transcend Ireland's "intensely local interest" in adjudicating a controversy that profoundly affects its citizens. *See Jennings*, 660 F.Supp. at 808; *Harrison v. Wyeth Lab.*, 510 F.Supp. at 4–5; *Parke–Davis*, 628 F.Supp. at 1451–52.

With regard to the public interest consideration relating to whose law governs this controversy, the fact that foreign law may apply is often cited as a factor supporting dismissal. *See Jennings*, 660 F.Supp. at 809 n. 12; *Parke–Davis*, 628 F.Supp. at

1452; *Dowling*, 767 F.Supp. at 59. Defendants maintain that Irish law will govern, since all plaintiffs reside, received treatment, and allegedly contracted HIV in Ireland. Def. Reply Mem. in Supp. at 9; *see Dowling*, 767 F.Supp. at 59 (finding Irish law applies to virtually identical controversy). Not surprisingly, plaintiffs assert that Irish law will not govern because "the law of the site of the manufacture and development of the product at issue should be controlling." John Doe Pl. Mem. in Supp. at 13. The products at issue, however, have not yet been conclusively identified; as indicated already, defendants dispute the source of plaintiffs' HIV infection. Even if it were assumed that defendants' products were the source of infection, it is not entirely certain that under the prevailing choice of law principles, Irish law would not govern this controversy.[16] However, because the other public and private interest factors point sharply towards dismissal, this Court need not decide whether Irish law, or the law of some other American forum would control, if this action were to be retained here. Irrespective of

16. A federal court sitting in a diversity case must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 491, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). New York has adopted the "interest analysis" approach, *see Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 491 N.Y.S.2d 90, 94–95, 480 N.E.2d 679, 683–84 (1985); *Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963), under which "the law of the jurisdiction having the greatest interest in the litigation will be applied." *Schultz*, 491 N.Y.S.2d at 95, 480 N.E.2d at 684. As already indicated, this Court deems Ireland to have the greatest interest in this controversy. We find the rationale for applying the law of the place of the tortious conduct, "where conduct regulating rules are concerned," to be unpersuasive. That rationale is based upon the purportedly "'critical interest' of the 'locus jurisdiction ... in protecting the reasonable expectations of the parties who relied on [its law] to govern their primary conduct and in the admonitory effect that applying its law will have on similar conduct in the future.'" *Carlenstolpe*, 638 F.Supp. at 910 (citing *Schultz*, 491 N.Y.S.2d at 96, 480 N.E.2d at 685. The New York Court reasoned in *Schultz* that "when the conflicting rules involve the appropriate standards of conduct, rules of the road, for example, the law of the place of the tort" should have the predominant interest. 491 N.Y.S.2d at 95, 480 N.E.2d at 684. Where rules of product liability are involved, we think the forum where the products are sold

and consumed has the predominant interest in implementing the rules that form the basis for the "reasonable expectation of the parties" involved. As already discussed, from the perspective of influencing primary conduct, the forum where the product is sold is uniquely qualified to determine the controlling standards that reflect an equilibrium between its need for the product, and its desire to deter the sale of potentially harmful products to its citizens. Therefore, this Court believes that under a true application of the "interest analysis" approach, the law of the forum in which the products are sold should govern. In the instant controversy, that would be Irish law—a factor militating in favor of dismissal. However, because we recognize that our courts have reached conflicting conclusions on this issue, *compare Carlenstolpe v. Merck*, 638 F.Supp. 901, 910 (S.D.N.Y.1986) (rationale behind interests analysis suggests law of place of wrongful conduct should apply) *with Ledingham v. Parke–Davis*, 628 F.Supp. 1447, 1452 (E.D.N.Y.1986) (interest analysis suggests applying law of forum where product sold, in order not to displace regulatory scheme that forum decided was in citizens' best interest), we choose not to rely on this factor in reaching our decision on defendants' motion to dismiss. *See Jennings*, 660 F.Supp. at 809 n. 12 (court chooses not to decide choice of law issue where other factors point strongly towards dismissal).

whose law applies, we are convinced that the interests of the litigants, the Court, and the ends of justice weigh heavily on the side of dismissal in favor of an Irish forum.

## IV. Conditions Imposed Upon Dismissal

■ Defendants urge this Court to order an unconditional dismissal of both actions, but agree to consent to jurisdiction in Ireland, and to a tolling of the applicable statute of limitations from the time of filing in New York. Plaintiffs maintain that in the event this Court does dismiss on *forum non conveniens* grounds, conditions identical to those imposed in *Dowling v. Hyland Therapeutics,* 767 F.Supp. 57 (S.D.N.Y.1991) must be ordered to "permit uniformity of decisions within the jurisdiction of this District Court." Mary Doe Pl. Mem. in Supp. at 3. Plaintiffs also contend that defendants' failure "to seek any appellate review" of the *Dowling* conditional order in favor of defendants' motion to dismiss that action, somehow precludes defendants from challenging the imposition of similar conditions in the present instance. Mary Doe Pl. Mem. in Supp. at 24–29.

Plaintiffs' counsel fail to cite any support whatsoever for these rather novel theories. We are unaware of any authority requiring us to impose conditions identical to those in *Dowling,* on the theory that a defendant who prevails on a motion to dismiss due to *forum non conveniens* must risk appeal to challenge any unfavorable conditions attached to the dismissal, or otherwise be precluded, in a later case involving different plaintiffs, from arguing that identical conditions should not be imposed in conjunction with a similar dismissal order. Nor are we swayed by the force of counsel's reason. Any remotely credible claim that preclusion should be given effect must aver that the party precluded had a full and fair opportunity to litigate the issue in question [17], yet plaintiffs seem unable to maintain affirmatively and consistently that the order issued in *Dowling* was immediately appealable by prevailing defendants. *Compare* Mary Doe Pl. Mem. in Supp. at 24–29 *with* John Doe Pl. Mem. in Supp. at 17.[18] In any event, even if defendants were permitted to appeal immediately the conditions imposed by the District Court in *Dowling* [19], plaintiffs' counsel fail to offer any authority or rationale as to why conditions attached to a dismissal order, under the exercise of a Court's discretion, should be conferred preclusive effect. Defendants presumably chose to consent to the *Dowling* provisional order to obtain the *forum non conveniens* dismissal they requested. *See* 1 James W. Moore et al., *Moore's Federal Practice* ¶¶ 0.444[1], [3], [4] (1992) (absent knowing intention of parties, collateral estoppel effect not conferred upon judgments arrived at by consent or stipulation); *see also* Restatement (Second) of Judgments § 27 cmt. e at 257, 269 (1982). We query what incentives defendants would have to pursue litigation of the conditions set forth in *Dowling,* albeit objectionable from their perspective, rather

17. *See Gelb v. Royal Globe Ins. Co.,* 798 F.2d 38, 44 (2d Cir.1986), *cert. denied,* 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987) (noting importance of appellate review in receiving full and fair opportunity to litigate); *see also* 18 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* §§ 4416, 4423 (1981).

18. While counsel's initial brief in the *Mary Doe* action asserts that the *Dowling* order was immediately appealable, in the face of defendants' ardent opposition to this proposition, counsel's subsequent brief in the *John Doe* action implores the application of preclusion doctrines "whether or not the order issued was subject to appeal." John Doe Pl. Mem. in Supp. at 17.

19. *In re Union Carbide Corp.,* 809 F.2d 195, 203 may support the proposition that a prevailing defendant can immediately appeal from a *forum non conveniens* dismissal order in its favor to challenge specific conditions attached to the dismissal order. The Second Circuit permitted the defendants on cross-appeal to challenge specific conditions, once the plaintiffs had appealed the lower court's decision to dismiss. 809 F.2d at 203; *see,* Wright, Miller & Cooper, *Federal Practice and Procedure Jurisdiction 2d* § 3914.12 (1991) (if dismissal is appealed by plaintiff, defendant can cross-appeal to challenge conditions). The Court's language implied that the defendant could have appealed the conditions on its own, even absent the plaintiffs initially appealing the dismissal: "[the defendant's] position is comparable to that of a prevailing party which, upon being granted injunctive relief, is permitted to challenge by appeal conditions attaching to the injunction that are found to be objectionable." 809 F.2d at 203.

than accept the Court's generally favorable disposition of their motion. *See* Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 4421 at 201 (noting that parties may have excellent reasons for preferring not to appeal generally favorable judgments that otherwise might be accepted without appeal by their adversaries). Defendants should hardly be expected to foresee facing the imposition of similar conditions as a result of the filing of another action in this forum, brought by different plaintiffs but with circumstances virtually identical to those in *Dowling* with respect to a *forum non conveniens* inquiry, when the Court in *Dowling* held this forum to be clearly inconvenient for such an action. *See* Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* §§ 4424, 4426 (unforeseeability of issue arising again in future litigation sufficient to bar preclusion); *see also* Restatement (Second) of Judgments § 28 and cmt. i (1982); 1 James W. Moore et al., *Moore's Federal Practice* ¶¶ 0.444[3] at 736–744. Nor would a court, by according preclusive effect to conditions attached to a *forum non conveniens* dismissal order, wish to encourage defendants to anticipate the filing of additional suits by other plaintiffs who are aware that the forum is highly likely to be held inconvenient, but are hopeful of obtaining identical provisions attached to their dismissal order. Under these circumstances, and absent the articulation of any viable rationale by plaintiffs' counsel in support of its theory, we find no reason why this Court should be bound to impose the same conditions on its dismissal order as those provided in *Dowling*.

We are similarly astonished by counsel's concern with preserving the "uniformity of decisions within the jurisdiction of this District Court." Mary Doe Pl. Mem. in Supp. at 3. Plaintiffs extol the virtues of uniformity within the context of obtaining identical conditions as those issued in *Dowling;* yet, by maintaining their actions here and insisting that this is an appropriate forum to litigate their claims, it is plaintiffs who seek, in the first instance, a result that is directly contrary to *Dowling*. In any event, plaintiffs' suggestion that concerns of uniformity bind this Court to impose identical provisions as in *Dowling*, if given effect, could eviscerate the discretionary principles embodied in *forum non conveniens* analysis permitting a court to attach conditions to a dismissal where circumstances, in its view, warrant such provisions. *See Piper*, 454 U.S. at 257 and n. 25, 102 S.Ct. at 266 and n. 25; *In re Union Carbide Corp.*, 809 F.2d at 205.

 Of the four conditions set forth in the *Dowling* dismissal order, the most contentious one requires:

> that defendants will afford plaintiffs discovery in the United States by any of the methods permitted by Rule 26 of the Federal Rules of Civil Procedures for actions conducted in the United States, and that defendants agree to make available for discovery and for trial, and at their own expense, any documents, records, or witnesses, including retired employees, within their control that are needed for the fair adjudication of the plaintiffs' claims in Ireland.

Mary Doe Pl. Mem. in Supp. at 26.[20] Given the context under which the present suits arise before this Court, we believe that granting this condition is not appropriate. This is the third action brought by plaintiffs' counsel in this forum, stemming from virtually identical circumstances, and asserting claims with equally frail contacts to this District. Despite the *forum non conveniens* dismissal order in *Dowling*, plaintiffs' counsel initiated and maintained two other suits in New York, involving a total of eighty-two plaintiffs, with the express hope that if the cases were dismissed due to *forum non conveniens*, conditions identical to those in *Dowling* would be imposed. *See* Mary Doe Pl. Mem. in Supp. at 24–29; John Doe Pl. Mem. in Supp. at 15–17. The possibility of more suits, in the wake of a similar dismissal order, hardly seems remote. Under these circumstances, we share defendants' concern that this District not become a way-station for plaintiffs world-wide, who choose to stop at Foley Square just long enough to obtain a grant

---

**20.** Defendants have expressed willingness to consent to conditions similar to those authorized by the remaining provisions of the *Dowling* dismissal order.

of federal discovery with their *forum non conveniens* dismissal. The filing of suits in a forum known to be inconvenient, under hopes of being guaranteed certain procedural advantages in conjunction with a dismissal order, serves only to waste valuable judicial resources, and further congest an already crowded docket. We cannot endorse such a strategy by granting one of the aims it seeks to achieve.

We are also influenced by the Second Circuit's concern, expressed in *In re Union Carbide Corp.*, 809 F.2d at 205, with requiring a defendant, in conjunction with a favorable *forum non conveniens* dismissal order, "to consent to broad discovery of it by the plaintiffs under the Federal Rules of Civil Procedure" when the defendant "is confined to the more limited discovery" permitted under the laws of the foreign forum: "[b]asic justice dictates that both sides be treated equally, with each having equal access to the evidence in the possession or under the control of the other." 809 F.2d at 205. For this reason the Circuit Court in *In re Union Carbide Corp.* set aside the condition attached by the District Court to its dismissal order that required the defendant to subject to discovery under the Federal Rules of Civil Procedure. 809 F.2d at 205–06. The Court noted that the condition was deleted "without prejudice to the right of the parties to have reciprocal discovery of each other on equal terms under the Federal Rules, subject to such approval as may be required of the [foreign] court in which the case will be pending." 809 F.2d at 206. We believe a similar approach is appropriate in the present circumstances: if an Irish court permits discovery pursuant to the Federal Rules, this Order should not be construed to bar such a procedure. Absent such a court-approved agreement, however, discovery rules of the Irish forum in which the suits will be heard should govern.

With regard to the condition in *Dowling* requiring defendants to waive any statute of limitations defense that may be available to them, we believe a less expansive waiver to be more appropriate under the circumstances. Defendants will be required to waive any statute of limitations defense that arose since the commencement of each action in New York State Supreme Court.

As defendants do not contest the condition requiring them to consent to jurisdiction and service of process in suits filed in Ireland, we see no reason to alter this provision.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss on *forum non conveniens* grounds is granted in each case, subject to defendants' compliance with the following conditions:

1. that defendants consent to jurisdiction and service of process in any suit plaintiffs file in Ireland on claims that are the subject of the instant actions;

2. that defendants waive any statute of limitations defense that may have arisen since the commencement of their respective actions in New York State Supreme Court;

3. that defendants not act to prevent plaintiffs from returning to this Court if the Irish Court declines to accept jurisdiction, provided that an action is filed in Ireland within 90 days of the entry of this Order.

Due to this Court's disposition of these cases on *forum non conveniens* grounds, the question whether plaintiffs have standing to sue need not be reached.

SO ORDERED.